IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| JOSEPH PILLING, | Civ. No. 6:21-cv-00347-AA |
| Plaintiff, | **OPINION & ORDER** |
| v. | |
| ROAD MACHINERY & SUPPLIES, CO., | |
| Defendant. | |

AIKEN, District Judge.

This matter comes before the Court on Defendant Road Machinery & Supplies Co.'s Motion to Dismiss for Lack of Jurisdiction. ECF No. 13. The Court heard oral argument on August 4, 2021. ECF No. 28. For the reasons set forth below, the Court concludes it lacks personal jurisdiction over Defendant and so the Motion is GRANTED.

## BACKGROUND

Plaintiff Joseph Pilling is an Oregon resident and operates a rock crushing and materials handling business in Monroe, Oregon.[1] Pilling Decl. ¶¶ 2-3. ECF No. 22.

---

[1] Defendant has presented evidence that Plaintiff holds a California driver's license and asserts that Plaintiff is a resident of California. At this stage of the case, disputed issues of fact must be resolved in Plaintiff's favor, *Boschetto v. Hansing*, 593 F.3d 1011, 1015 (9th Cir. 2008), and so the Court accepts that Plaintiff is a resident of Oregon.

Page 1 –OPINION & ORDER

Defendant Road Machinery & Supplies Company is a Minnesota corporation with its principal place of business in Savage, Minnesota. Johnson Decl. ¶ 3. ECF No. 16. Defendant distributes, rents, and repairs heavy construction and mining equipment, primarily throughout the Upper Midwest. *Id.* at ¶ 2. Defendant has offices in Minnesota, Iowa, Illinois, and Michigan. *Id.* at ¶ 3. Defendant does not have offices in Oregon, nor is it registered to do business in Oregon. *Id.*

In May 2020, Plaintiff hired Defendant to inspect an excavator being offered for sale in Minnesota by a third party. Pilling Decl. ¶¶ 4-6. Defendant performed the inspection in Minnesota. Johnson Decl. ¶ 7. Based on the results of Defendant's inspection, Plaintiff did not purchase the excavator. Pilling Decl. ¶ 7.

In the summer of 2020, Defendant placed an advertisement in a trade magazine offering a 2015 Komatsu WA 500-7 Wheel Loader (the "Loader") for sale in Savage, Minnesota for $239,000. Johnson Decl. ¶ 8. Plaintiff saw the advertisement in June 2020 and contacted Defendant to discuss purchasing the Loader. Pilling Decl. ¶ 8.

Between July 10, 2020 and August 5, 2020, Plaintiff spoke with Defendant's sales representative multiple times to discuss Plaintiff's requirements, as well as the condition and price of the Loader. Pilling Decl. ¶¶ 9-12; Nickell Decl. ¶¶ 2-8. ECF No. 15. Plaintiff alleges Defendant made numerous representations to him about the condition of the Loader and its suitability for Plaintiff's needs. Compl. ¶¶ 11-12. ECF No. 1. The parties came to an agreement whereby Plaintiff would purchase the Loader from Defendant for $215,000. Pilling Decl. ¶ 13; Nickell Decl. ¶ 4. Plaintiff

agreed to pay $115,000 as a down payment, with the remainder paid through financing. Pilling Decl. ¶ 13. Plaintiff obtained financing from a third party, Komatsu Financial. *Id.*

On August 6, 2020, Defendant received a wire transfer of $115,000 from Plaintiff for the purchase price of the Loader. Johnson Decl. ¶ 9. Plaintiff's credit application was forwarded to Komatsu Financial for evaluation of extending credit for the remainder of the purchase price. Johnson Decl. ¶ 9. The remaining $100,000 "was funded to [Defendant] from Komatsu indicating reasonable credit approval by Komatsu Financial." Johnson Decl. ¶ 9.

On August 17, 2020, the Loader was picked up from Defendant's facility in Minnesota by a third-party trucking company for delivery to Oregon. Johnson Decl. ¶ 10. The Loader arrived in Monroe, Oregon on August 20, 2020. Pilling Decl. ¶ 19. Plaintiff alleges that when the Loader arrived in Oregon, it was badly corroded, defective, and malfunctioning, contrary to the representations made to Plaintiff by Defendant. Compl. ¶¶ 18-19.

On August 22, 2020 and again on September 23, 2020, Plaintiff notified Defendant in writing of the defects in the Loader. Pilling Decl. ¶ 25. Plaintiff rejected the Loader and revoked the purchase agreement. *Id.* The Loader remains in Oregon and it would cost $12,000 to ship the Loader back to Minnesota. *Id.* at ¶ 37.

Defendant's annual revenues for 2017-2020 totaled approximately $200 million. Johnson Decl. ¶ 6. Only $308,305.43 of that revenue, or 0.04% of the total,

is attributable to transactions involving Oregon entities, including $215,000 for the sale of the Loader at issue here. *Id.*

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(2), a defendant may move for dismissal for lack of personal jurisdiction. The plaintiff has the burden of showing that the exercise of personal jurisdiction is proper. *Boschetto v. Hansing*, 593 F.3d 1011, 1015 (9th Cir. 2008).

"In diversity cases, the court looks to the law of the state in which it sits to determine whether it has personal jurisdiction over the non-resident defendant." *IPSL, LLC v. College of Mt. St. Vincent*, 383 F. Supp.3d 1128, 1135 (D. Or. 2019). Oregon Rule of Civil Procedure 4 governs personal jurisdiction in Oregon and confers jurisdiction to the extent permitted by due process. *Gray & Co. v. Firstenberg Mach. Co.*, 913 F.2d 758, 760 (9th Cir. 1990). When the state's long-arm statute reaches as far as the Due Process Clause, the court need only analyze whether the exercise of jurisdiction comports with federal due process standards. *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1129 (9th Cir. 2003).

To comport with due process, "the nonresident generally must have 'certain minimum contacts [with the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Walden v. Fiore*, 571 U.S. 277, 283 (2014) (quoting *Int'l Shoe Co. v. Wash*, 326 U.S. 310, 316 (1945)).

## DISCUSSION

Plaintiff brings this action alleging breaches of express and implied warranties by Defendant arising out of the sale of the Loader. Defendant moves to dismiss on the basis that this Court lacks personal jurisdiction over Defendant and that Plaintiff has failed to state a claim. In the alternative, Defendant moves to transfer this case to the District of Minnesota.

As jurisdiction is a threshold inquiry, the Court concludes that it is the most logical and efficient starting point. As noted, Plaintiff bears the burden of making a prima facie showing of personal jurisdiction. *Boschetto*, 539 F.3d at 1015. "[U]ncontroverted allegations in [the plaintiff's] complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in [the plaintiff's] favor." *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002).

The forum state may exercise either general or specific jurisdiction over a non-resident defendant. *Boschetto*, 539 F.3d at 1016. "A court has general personal jurisdiction over a defendant whose contacts with the forum are 'continuous and systematic,' even if those contacts are wholly unrelated to the plaintiff's claims." *Helicopter Transp. Servs., LLC v. Sikorsky Aircraft Corp.*, 253 F. Supp.3d 1115, 1123 (D. Or. 2017) (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415-16 (1984)). If the court lacks general personal jurisdiction, it may have specific personal jurisdiction if the defendant has certain minimum contacts with the forum state, the controversy arose out of those contacts, and the exercise of

jurisdiction is reasonable. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-78 (1985).

In this case, neither party argues Defendant would be subject to general personal jurisdiction in Oregon and so the Court confines its analysis to specific personal jurisdiction. The Ninth Circuit uses a three-part test to determine if a party has sufficient minimum contacts to be subject to specific personal jurisdiction:

(1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the form, thereby invoking the benefits and protection of its laws;

(2) The claim must be one which arises out of or relates to the defendant's forum-related activities; and

(3) The exercise of jurisdiction must comport with fair play and substantial justice, *i.e.*, it must be reasonable.

*Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015) (quoting *Schwarzeneggar v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004)).

The plaintiff bears the burden on the first two prongs of the test. *Picot*, 780 F.3d at 1211. If the plaintiff makes the necessary showing, "the burden shifts to the defendant to set forth a compelling case that the exercise of jurisdiction would not be reasonable." *Id.* (internal quotation marks and citation omitted).

The first prong of the test can be satisfied in two ways: either the non-resident defendant must purposefully direct his activities in the forum state, or the defendant

must purposefully avail himself of the privilege of conducting activities in the forum. *Picot*, 780 F.3d at 1212. "Purposeful availment" is most often applied to contract claims, while "purposeful direction" is most often applied to tort claims. *Id*. In this case, Plaintiff's claims sound in contract and so purposeful availment is the appropriate analysis. *See Boschetto*, 539 F.3d at 1016.

The purposeful availment analysis asks "whether a defendant has 'purposefully availed himself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Picot*, 780 F.3d at 1212 (quoting *Schwarzeneggar*, 374 F.3d at 802 (alterations normalized)). "Purposeful availment analysis examines whether the defendant's contacts with the forum are attributable to his own actions or are solely the actions of the plaintiff." *Sinatra v. Nat'l Enquirer, Inc.*, 854 F.2d 1191, 1195 (9th Cir. 1988). "In order to have purposefully availed oneself of conducting activities in the forum, the defendant must have performed some type of affirmative conduct which allows or promotes the transaction of business with the forum state." *Id*.

"A showing that a defendant purposefully availed himself of the privilege of doing business in a forum state typically consists of evidence of the defendant's actions in the forum, such as executing or performing a contract there." *Schwarzeneggar*, 374 F.3d at 802. Courts should consider "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *Burger King*, 471 U.S. at 479. A court's "evaluation of the jurisdictional significance of a defendant's contract or other business in the

forum is not rigid and formalistic, but rather practical and pragmatic." *Boschetto*, 539 F.3d at 1016. Of particular note, "the formation of a contract with a nonresident defendant is not, standing alone, sufficient to create jurisdiction." *Id.* at 1017.

In *Boschetto*, the Ninth Circuit considered a case in which a California plaintiff purchased a used car from Wisconsin defendants over the Internet. *Boschetto*, 539 F.3d at 1014. The vehicle was advertised as being in good condition and free of rust and the plaintiff purchased it sight-unseen. *Id.* The plaintiff arranged for the vehicle to be transported to California by a third party and when it arrived, the plaintiff found the car to be rusted and non-functional. *Id.* at 1014-15. The plaintiff filed suit in the Northern District of California and the district court dismissed based on lack of specific personal jurisdiction over the Wisconsin defendants. *Id.* at 1015. The Ninth Circuit affirmed, holding that the plaintiff failed at the first step of the test for specific jurisdiction because:

> [T]he lone transaction for the sale of one item does not establish that the Defendants purposefully availed themselves of the privilege of doing business in California. The arrangement between Boschetto and Hansing which is, at bottom, a contract for the sale of a good, is insufficient to have created a substantial connection with California. Hansing . . . did not create any ongoing obligations with Boschetto in California; once the car was sold the parties were to go their separate ways. Neither Boschetto's complaint nor his affidavit in opposition to dismissal point to any continuing commitments assumed by the Defendants under the contract. Nor did performance of the contract require the Defendants to engage in any substantial business in California. On Boschetto's version of the facts, funds were sent to Wisconsin and arrangements were made to pick up the car there and have it delivered to California. This was, as the district court observed, a "one-shot affair."

*Boschetto*, 539 F.3d at 1017.

The present case is substantially similar *Boschetto*. Plaintiff, based in Oregon, contracted to purchase the Loader from Defendant, based in Minnesota. Upon payment, Defendant released the Loader to Plaintiff in Minnesota and Plaintiff arranged for the Loader to be transported to Oregon by a third party. As in *Boschetto*, this was a "one-shot affair," and does not establish purposeful availment on the part of Defendant.

The fact that the parties engaged in protracted negotiations by telephone and email does not alter this analysis. *See, Gullette v. Lancaster & Chester Co., Inc.*, No. 3:14-cv-00537-HZ, 2014 WL 3695515, at *6 (D. Or. July 23, 2014) ("[T]he parties use of mail or telephone during negotiations is not sufficient conduct to qualify as purposeful availment."). Nor does the previous unrelated contract between the parties for inspection of an excavator establish a continuing relationship such that Defendant has purposefully availed itself of the privilege of doing business in Oregon. That contract was initiated by Plaintiff, who retained the Minnesota-based Defendant to perform a discrete and specific service in Minnesota.

At oral argument, Plaintiff's counsel pointed to the financing document as establishing a continuing obligation between the parties, but Plaintiff did not receive any credit from Defendant in purchasing the Loader. Plaintiff's own Declaration affirms that "[t]he credit that I obtained for the remainder of the purchase price after my down payment was through Komatsu Financial," and "[t]he final Agreement I signed with [Defendant], on information and belief, was assigned to Komatsu Financial." Pilling Decl. ¶ 36; *see also* Johnson Decl. ¶ 9 (the balance of the purchase

price was paid to Defendant by Komatsu Financial on August 6, 2020); Pl. Resp. at 7 ("Plaintiff did not finance the Loader with the defendant. There was no credit extended by [Defendant] to the plaintiff."), ECF No. 21. To the extent that any continuing obligations exist from that agreement, they are between Plaintiff and Komatsu Financial, rather than between Plaintiff and Defendant.

The Court concludes that, as in *Boschetto*, Plaintiff has failed to establish the first prong of the test for specific personal jurisdiction. Accordingly, the Court need not reach the second or third prong of the analysis. *See Boschetto*, 539 F.3d at 1016 ("[I]f the plaintiff fails at the first step, the jurisdictional inquiry ends and the case must be dismissed."). Likewise, the Court need not reach Defendant's arguments concerning failure to state a claim or the propriety of transferring the case to the District of Minnesota. Defendant's Motion is GRANTED.

## CONCLUSION

Defendant's Motion to Dismiss for Lack of Personal Jurisdiction, ECF No. 13, is GRANTED. This case is DISMISSED without prejudice and final judgment shall be entered accordingly.

It is so ORDERED and DATED this ___10th___ day of August 2021.

                        /s/Ann Aiken
                        ANN AIKEN
                        United States District Judge